UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH HUNT | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 95-10169-NG |
| | ) |
| MASSACHUSETTS DEPARTMENT OF CORRECTION | ) |
| | ) |
| and | ) |
| | ) |
| CORRECTIONAL MEDICAL SERVICES | ) |
|     Defendants. | ) |

## AMENDED COMPLAINT

### PARTIES

1. Kenneth Hunt is an inmate currently incarcerated at MCI Shirley in the medium security facility.

2. The Department of Correction (D.O.C.) is headquartered at 50 Maple Street in Milford, Massachusetts, and is responsible for the oversight and custody of the inmates committed to the state correctional system.

3. Correctional Medical Services, Inc., of St. Louis, Missouri, is under contract with the Department of Correction to provide "Comprehensive Health Services to Massachusetts Prison Population." CMS, in turn, hired a local subcontractor to provide mental health treatment to inmates of the DOC.

### COUNT I

4. Plaintiff suffers from gender identity disorder (G.I.D.). As early as 1990, an administrative mental health examination was performed on Mr. Hunt at the request of the D.O.C.'s Health Services Office. At that time, Mr. Hunt was diagnosed as suffering from G.I.D.

DOCKETED 132

5. Plaintiff was evaluated again in 1992, at which time Mental Health Services recommended that "1. Mr. Hunt engage in individual therapy . . . c) to continue to address gender identity issues."

6. Plaintiff originally filed a *pro se* Complaint on January 30, 1995, essentially alleging that he was subject to cruel and unusual punishment in violation of the Eight Amendment as a result of the D.O.C.'s deliberate indifference to a serious medical need and their refusal to provide suitable treatment for his condition as a transsexual.

7. After counsel was appointed for plaintiff, an independent evaluation was conducted by David Seil, M.D.

8. On June 22, 1999 James Hickey, then the Mental Health Director at MCI Shirley, submitted a "Mental Health Treatment Plan for Kenneth Hunt." This treatment plan was created using both the report of Dr. Seil and the reports of a number of therapists and psychologists who evaluated plaintiff for the Department of Correction.

9. On September 3, 1999, a Stipulation of Dismissal was entered into between plaintiff and the D.O.C.. The case was dismissed "without prejudice to the right, upon good cause shown, to reopen the action if defendants prevent plaintiff from obtaining treatment for his/her gender dysphoria in accordance with the treatment plan" of June 22, 1999.

10. On February 7, 2000, plaintiff filed a *pro se* motion to re-open his case, which was endorsed by Judge Gertner on May 18, 2000.

11. Prison officials have continually demonstrated a deliberate indifference to Plaintiff's serious medical need. Since at least 1990, the D.O.C. has been aware of (and has not disputed) plaintiff's diagnosis of G.I.D. Additionally, they have been aware since at least 1995 (when the original Complaint was filed) that plaintiff contended that he was not receiving adequate medical attention for this disorder. Finally, the D.O.C. entered into a Stipulation of Dismissal on September 3, 1999, with the agreement that treatment for plaintiff's G.I.D. would be provided in accordance with the Harry Benjamin Standards of Care.

12. CMS has been under contract to provide "Comprehensive Health Services to Massachusetts Prison Population" since August of 1998. Therefore, CMS (and its subcontractor, UMass, were responsible for providing mental health treatment to Kenneth Hunt at the time that the June 1999 Treatment Plan was submitted by James Hickey. Additionally, CMS knew or should have known of the Stipulation of Dismissal entered into between the D.O.C. and plaintiff, which specifically required that Mr. Hunt receive treatment that references the Harry Benjamin Standards of Care.

13. Plaintiff is entitled to treatment for his serious medical condition, and the denial of this treatment constitutes deliberate indifference in violation of the Eighth Amendment.

14. Plaintiff is being prevented from receiving the treatment recommended — and agreed upon in the September 1999 Stipulation of Dismissal — because the therapist assigned to treat him does not possess even the recommended minimal credentials for special competence with gender identity disorders that are listed in the Harry Benjamin Standards of Care.

### **RELIEF REQUESTED**

Plaintiff requested form of relief is an injunction requiring that he be provided with treatment in prison for his gender identity disorder that is consistent with the Harry Benjamin Standards of Care, as agreed to between the parties in the September 1999 Stipulation of Dismissal. Plaintiff therefore requests that this Court issue an Order requiring that the Department of Correction:

1. Retain a doctor who specializes in gender identity disorder to evaluate plaintiff;

2. Authorize that doctor to prescribe any treatment deemed appropriate;

3. Provide the treatment prescribed by that doctor; and

4. Any other relief that this Court deems appropriate.

Respectfully submitted
**KENNETH HUNT**
By his attorneys,

I certify that a true copy of the above document was served upon the attorney of record for each other party by MAIL/HAND on the date stated herein

*Christie M. Charles*

Dated: 11/25/02

*Christie M. Charles*

George F. Gormley
BBO No. 204140
Christie M. Charles
BBO No. 646995
***George F. Gormley, P.C.***
655 Summer Street
Boston, MA 02210
(617) 478-2750